JEFFER MANGELS BUTLER & MITCHELL LLP
THOMAS M. GEHER (Bar No. 130588)
*(tmg@jmbm.com)*
Two Embarcadero Center, Fifth Floor
San Francisco, CA 94111-3824
Telephone: (415) 398-8080
Facsimile: (415) 398-5584

HEITNER LEGAL, PLLC
DARREN HEITNER (Fl. Bar No. 85956)
*(darren@heitnerlegal.com)*
215 Hendricks Isle
Fort Lauderdale, FL 33301
Telephone: (954) 558-6999
*Pro Hac Vice*

Attorneys for Defendant Sure Sports, LLC

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>EVANDER KANE,<br><br>    Debtor. | Case No. 21-50028 SLJ<br><br>Chapter 7<br><br>Honorable Stephen L. Johnson |
| FRED HJELMESET<br><br>Trustee in Bankruptcy,<br><br>    Plaintiff,<br><br>vs.<br><br>SURE SPORTS, LLC, FKA;<br>SURE SPORTS LENDING, LLC,<br><br>    Defendant | Adversary Proceeding No. 22-05033 SLJ<br><br>**DEFENDANT'S MOTION FOR ORDER (1) GRANTING JURY TRIAL AND (2) DECLARING THAT THE BANKRUPTCY COURT DOES NOT HAVE AUTHORITY TO ENTER FINAL JUDGMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: May 9, 2023<br>Time: 1:30 pm Pacific Time<br>Place: Via Zoom Video Conference |

71108789v2

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................. 1

II. STATEMENT OF FACTS ................................................................................... 1

III. THE BANKRUPTCY COURT DOES NOT HAVE THE CONSTITUTIONAL AUTHORITY TO ENTER A FINAL JUDGMENT ON THE ACT CLAIM ................................................................. 3

    A. The Act Claim is a "Non-Core" Matter ................................................. 3

    B. The Bankruptcy Court Does Not Have the Constitutional Authority to Enter a Final Judgment in this Adversary Proceeding. ............................................................ 4

IV. SURE SPORTS IS ENTITLED TO A JURY TRIAL ON THE ACT CLAIM ................................................................................................... 11

V. CONCLUSION .................................................................................................. 12

71108789v2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Castlerock Properties*,
   781 F.2d 159 (1986) ..........................................................................................................3

*In re Cinematronics, Inc.*,
   916 F.2d 1444 (1990) ........................................................................................................3

*In re Deitz*,
   469 B.R. 11 (9th Cir. B.A.P. 2012) ..................................................................................8

*In re Gardner*,
   913 F.2d 1515 (10th Cir. 1990) ........................................................................................4

*Granfinanciera, S.A. v. Norberg*,
   492 U.S. 33 (1989) .............................................................................................6, 7, 11, 12

*Pernell v. Southhall Realty*,
   416 U.S. 363 (1974) ........................................................................................................11

*Security Farms v. Merchant Brotherhood of Teamsters, etc.*,
   124 F.3d 99 (9th Cir. 1997) ..............................................................................................4

*Stern v. Marshall*,
   564 U.S. 462 (2011) ................................................................................................. *passim*

*Walden v. Stone*,
   698 F.3d 910 (6th Cir. 2012) ................................................................................8, 9, 10

**Statutes**

28 U.S.C. § 157 ........................................................................................................................3, 12

28 U.S.C. § 157(b)(1) ....................................................................................................................3

28 U.S.C. § 157(b)(2)(C) ......................................................................................................4, 5, 7

28 U.S.C. § 157(c)(1) ....................................................................................................................3

28 U.S.C. § 157(e) .......................................................................................................................12

**Other**

California Bus. & Prof. Code § 18895 *et seq.*..............................................................................2

California Civil Code § 3294 ......................................................................................................10

Miller Ayala Athlete Agents Act, Bus. & Prof. Code § § 18895, *et seq.*................................ *passim*

71108789v2

ii

MOTION RE JURY TRIAL AND ENTRY OF FINAL JUDGMENT

# I

# INTRODUCTION

The first claim for relief asserted by Plaintiff Fred Hjelmeset, Chapter 7 Trustee ("Plaintiff"), for "Violation of The Miller-Ayala Act" (the "Act Claim") asserts a private right and seeks a monetary judgment against Defendant Sure Sports LLC ("Sure Sports") (i) in an amount no less than $452,414.31, representing money allegedly paid by debtor Evander Kane ("Debtor") to Sure Sports, (see, Complaint, ¶ 76), plus (ii) actual and statutory damages of not less than $50,000 (see, Complaint, ¶ 77), plus (iii) punitive damages (see, Complaint, ¶ 77), plus (iv) attorney's fees and costs (see, Complaint, ¶ 77). The Trustee's Act Claim is a "legal" claim (as opposed to an "equitable" claim) that existed prior to Debtor's bankruptcy case and seeks affirmative monetary relief against Sure Sports to augment Debtor's bankruptcy estate. Accordingly, as explained in detail below, (i) the determination of the Act Claim is a "judicial power" that can only be determined by an Article III Court, which the Bankruptcy Court is not, (ii) the Bankruptcy Court does not have the constitutional authority to determine the Act Claim and enter a final judgment thereon (and Sure Sports has not and does not consent to the Bankruptcy Court's determination of the Act Claim or entry of judgment thereon; see, Sure Sports' Answer and Affirmative Defenses, ¶ 21), and (iii) Sure Sports is entitled to a jury trial (and Sure Sports does not consent to a jury trial in the Bankruptcy Court). Based thereon, the Bankruptcy Court cannot hear **and** determine or enter any final judgment on the Act Claim and cannot conduct the jury trial on the Act Claim to which Sure Sports is entitled. The Plaintiff's Act Claim cannot be determined in, and a judgment thereon cannot be entered by, the Bankruptcy Court.

# II

# STATEMENT OF FACTS

As alleged by Plaintiff, in 2018 and 2019, prior to the commencement of Debtor's bankruptcy case, Debtor and Sure Sports were parties to various written contracts and Debtor, prior to the commencement of his bankruptcy case, paid Sure Sports for the services performed by Sure Sports for Debtor's benefit. Pursuant to Plaintiff's Complaint, Debtor, allegedly, prior to the commencement of his bankruptcy case, paid Sure Sports "at least $452,414.31 … pursuant to the

Agreements." Complaint, ¶ 61.

On January 9, 2021, Debtor commenced his chapter 7 bankruptcy case and Plaintiff was appointed as the chapter 7 trustee of Debtor's estate.

On April 12, 2021, Sure Sports filed a proof of claim against Debtor's estate asserting an unsecured claim in the sum of $1,187,950.94 for Debtor's breach of his agreements with Sure Sports, representing sums due under the relevant pre-bankruptcy agreements. Complaint, ¶¶ 8 and 62.

On September 13, 2022, Plaintiff commenced this adversary proceeding against Sure Sports by the filing of a "Complaint For: (1) Violation of the Miller Ayala Athlete Agents Act, Bus. & Prof. Code §§ 18895, *et seq*.; and (2) Declaratory Relief" (the "Complaint"). On February 7, 2023, Sure Sports filed its "Answer and Affirmative Defenses; and Demand for Jury Trial" in response to the Complaint (i) asserting, among other things, that the Bankruptcy Court does not have the authority to "hear and determine" the Act Claim, i.e., enter a final judgment, and (ii) demanding a jury trial.

The Complaint's first claim for relief, i.e., the Act Claim, asserts that the "Underwriting Agreements" and "Fee Agreements" entered into between Debtor and Sure Sports years before the commencement of Debtor's bankruptcy case (the "Agreements") and the money Debtor paid pursuant thereto violated the Miller-Ayala Act codified by California Bus. & Prof. Code § 18895 *et seq*. (the "Act"). By the Act Claim, Plaintiff seeks a monetary judgment against Sure Sports (i) in an amount no less than $452,414.31, representing money allegedly paid by Debtor to Sure Sports, (see, Complaint, ¶ 76), plus (ii) actual and statutory damages of not less than $50,000 (see, Complaint, ¶ 77), plus (iii) punitive damages (see, Complaint, ¶ 77), plus (iv) attorney's fees and costs (see, Complaint, ¶ 77).

The Act Claim is a state law claim that existed prior to Debtor's bankruptcy case, is not a federal cause of action, is not a cause of action created by the Bankruptcy Code, and is not a core proceeding "arising under title 11" or "arising in a case under title 11."

The Complaint's second claim for relief is for "Declaratory Relief" and seeks a judgment declaring "that Sure Sports has no right to recover any amounts from the estate related to or in

connection with the Agreements, and may recover nothing from its Proof of Claim." Complaint, ¶ 80.

## III

## THE BANKRUPTCY COURT DOES NOT HAVE THE CONSTITUTIONAL AUTHORITY TO ENTER A FINAL JUDGMENT ON THE ACT CLAIM

A. <u>The Act Claim is a "Non-Core" Matter</u>.

Standing on its own, the Act Claim is a noncore matter which the Bankruptcy Court cannot, without the consent of the parties, enter a final judgment.

28 U.S.C. § 157(b)(1) provides that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title."

28 U.S.C. § 157(c)(1) provides that "[a] bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected."

The Ninth Circuit Court of Appeals has "emphasized that courts 'should avoid characterizing a proceeding as 'core' if to do so would raise constitutional problems.' (Citation omitted.)" *In re Cinematronics, Inc.*, 916 F.2d 1444, 1450 (1990). *See also*, *In re Castlerock Properties*, 781 F.2d 159, 162 (1986)("[W]e are persuaded that a court should avoid characterizing a proceeding as 'core' if to do so would raise constitutional problems.")

Based upon 28 U.S.C. § 157, Bankruptcy Courts can hear and determine, i.e., enter a final judgment, in "core proceedings," but cannot hear and determine, i.e., enter a final judgment, in noncore proceedings without the consent of the parties.

The Ninth Circuit has firmly established that "actions that do not depend on bankruptcy

Case: 22-05033   Doc# 30   Filed: 04/11/23   Entered: 04/11/23 10:27:51   Page 6 of 15
71108789v2        MOTION RE JURY TRIAL AND ENTRY OF FINAL JUDGMENT

laws for their existence that could proceed in another court are considered 'non-core.'" *Security Farms v. Merchant Brotherhood of Teamsters, etc.*, 124 F.3d 99, 1008 (9th Cir. 1997). *See also, In re Gardner*, 913 F.2d 1515, 1518 (10th Cir. 1990)("actions which do not depend on the bankruptcy laws for their existence and could proceed in another court are not core proceedings.")

There cannot be any dispute that (i) Plaintiff's Act Claim is a claim that "does not depend on the bankruptcy laws for [its] existence" because it is a claim based exclusively on California state law and (ii) Plaintiff could have commenced his Act Claim in the California state courts or the U.S. District for the Northern District of California, due the existence of diversity subject matter jurisdiction. Based upon the Ninth Circuit's explicit and unambiguous definition of a "noncore proceeding," Plaintiff's Act Claim is a noncore proceeding and the Bankruptcy Court has no authority to enter a final judgment on the Act Claim.

B.    <u>The Bankruptcy Court Does Not Have the Constitutional Authority to Enter a Final Judgment in this Adversary Proceeding</u>.

Notwithstanding the foregoing, Sure Sports acknowledges and recognizes that 28 U.S.C. § 157(b)(2)(C) provides that "Core proceedings include, but are not limited to … (C) counterclaims by the estate against persons filing claims against the estate." However, as recognized by the U.S. Supreme Court, 28 U.S.C. § 157(b)(2)(C) does **not** provide the Bankruptcy Court with the necessary authority to hear and determine all "counterclaims by the estate against persons filing claims against the estate." *See*, *Stern v. Marshall*, 564 U.S. 462, 482 (2011)("Although we conclude that § 157(b)(2)(C) permits the Bankruptcy Court to enter final judgment on [debtor's] counterclaim [to the creditor's proof of claim], Article III of the Constitution does not.") and *Stern* at 469 ("We conclude that, although the Bankruptcy Court had statutory authority to enter judgment on [debtor's] counterclaim [to the proof of claim], it lacked the constitutional authority to do so.")

In *Stern*, prior to the debtor's bankruptcy case, the debtor had commenced an action in the Texas state court against her husband's son asserting that the son fraudulently induced her husband to sign a living trust that did not include her. The son denied such allegations. After debtor's husband died, debtor commenced her bankruptcy case. In debtor's bankruptcy case, the son filed a

4
71108789v2          MOTION RE JURY TRIAL AND ENTRY OF FINAL JUDGMENT

Complaint against debtor for nondischargeability (based on a defamation claim) and filed a proof claim for money (based on damages from the alleged defamation by debtor). In response, debtor filed a counterclaim against the son for tortious interference with the gift she expected from her deceased husband and "argu[ed] that [the son's proof of] claim was unenforceable and that [the son] should not receive any amount for it." *Id*. at 480. In *Stern*, as set forth above, the U.S. Supreme Court held that, notwithstanding the statutory authority of 28 U.S.C. § 157(b)(2)(C), the Bankruptcy Court, as an Article I court, did not have the constitutional authority to exercise judicial power and hear and determine, i.e., enter a final judgment on, debtor's counterclaim. In *Stern*, the Supreme Court stated that "we agree with [the son] that designating all counterclaims as 'core' proceedings raises serious constitutional concerns." *Id*. at 477.

Article III of the Constitution "commands that 'the judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish.' That Article further provides that the judges of those courts shall hold their offices during good behavior, without diminution of salary." *Id*. at 469. It cannot be disputed that the Bankruptcy Court is not an Article III Court. *See, Stern*.

In *Stern* at 487, the Supreme Court stated

> [i]t is clear that the Bankruptcy Court in this case exercised the 'judicial Power of the United States' in purporting to resolve and enter final judgment on a state common law claim, just as the court did in *Northern Pipeline*. No **'public right'** exception excuses the failure to comply with Article III in doing so, any more than in *Northern Pipeline*. [The debtor] argues that this case is different because the defendant is a creditor in bankruptcy [who filed a proof of claim]. But the debtors' claims in the cases on which she relies were themselves federal claims under bankruptcy law, which would be completely resolved in the bankruptcy process of allowing or disallowing claims. Here [debtor's] claim is a state law action independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy. (Emphasis added.)

*Stern* then explained the difference between "public right" and "private right." "Public right" claims are "those arising 'between the Government and persons subject to its authority in connection with the performance of constitutional functions of the executive or legislative departments.' (Citation omitted.)" *Id*. at 489. On the other hand, "private right" claims are

5
71108789v2   MOTION RE JURY TRIAL AND ENTRY OF FINAL JUDGMENT

"matters … 'of liability of one individual to another under the law as defined.' (Citations omitted.)" *Id*. at 489. "[W]hat makes a right 'public' rather than private is that the right is integrally related to particular Federal Government action." *Id*. at 490-491. *Stern* at 492 went on and, citing to its prior decision in *Granfinanciera, S.A. v. Norberg*, 492 U.S. 33 (1989), stated that "[w]e explained that, '[i]f a statutory right is not closely intertwined with a federal regulatory program Congress has power to enact, and if that right neither belongs to nor exists against the Federal Government, then it must be adjudicated by an Article III court. (Citations omitted.)" Thus, *Stern* at 493 concluded "that [debtor's] counterclaim … does not fall within any of the varied formulations of the public rights exception in this Court's cases. It is not a matter than can be pursued only by grace of the other branches. … The claim is instead one under state common law between two private parties. It does not 'depend upon the will of Congress,' (citation omitted); Congress has nothing to do with it. … [and debtor's] claimed right to relief does not flow from a federal statutory scheme."

Here, Plaintiff's Act Claim is not a public right claim. The Act Claim is not integrally related to any particular Federal Government action. The Act Claim asserted is not a right that belongs to or exists against the Federal Government. The Act Claim is a state law claim between two private parties and seeks to adjudicate liability between two private parties, without any connection to any federal government action. Congress had no involvement with the Act; nor does the Trustee's claimed right to relief "flow from any federal statutory scheme." Thus, like the debtor's counterclaim in *Stern*, the Act Claim is not subject to the public right exception and must be "heard and determined" by an Article III court.

Additionally, *Stern* rejected the debtor's contention that the son's filing of a proof claim amounts to consent to the jurisdiction of the Bankruptcy Court or confers authority in the Bankruptcy Court for the adjudication of a debtor's counterclaim. *Id*. at 493-495. In this regard, *Stern* stated "[the son] did not truly consent to the resolution of [debtor's] [counter]claim in the bankruptcy court proceedings. He had nowhere else to go if he wished to recover from [debtor's] estate." Accordingly, Sure Sports filing of its proof of claim against Debtor's estate has no bearing on whether or not the Bankruptcy Court has the constitutional authority to "hear and determine"

Plaintiff's Act Claim.

Further, *Stern* ruled the Bankruptcy Court could not "hear and determine" debtor's counterclaim "that simply attempts to augment the bankruptcy estate – the very type of claim that we held in *Northern Pipeline* and *Granfinanciera* **must** be decided by an Article III court. (Emphasis added.)" *Id*. at 495. *Stern* went on and ruled that the Bankruptcy Court, notwithstanding 28 U.S.C. § 157(b)(2)(C), could not "hear and determine" debtor's counterclaim to the son's proof of claim because "there was never any reason to believe that the process of adjudicating [the son's] proof of claim would necessarily resolve [debtor's] counterclaim." *Id*. at 497. The Supreme Court at 498 explained that "because [debtor] sought punitive damages in connection with her counterclaim, the Bankruptcy Court could not finally dispose of the case in [debtor's] favor without determining whether to subject [the son] to the sort of 'retribution,' 'punishment[,] and deterrence,' (citation omitted), those damages are designed to impose. There, thus was never reason to believe that the process of ruling on [the son's] proof of claim would necessarily result in the resolution of [debtor's] counterclaim." Here, the Act Claim seeks punitive damages. See, Complaint, ¶ 77. The resolution of the issue of punitive damages is not necessary for the resolution of Sure Sports' proof of claim. The resolution of Sure Sports proof of claim will not fully resolve the Act Claim and its claim for punitive damages. Thus, the Bankruptcy Court cannot "hear and determine" Plaintiff's Act Claim.

Finally, with respect to *Stern*, the Supreme Court also determined that (i) debtor's counterclaim was "in no way derived from or dependent upon bankruptcy law; it is a state tort action that exists without regard to any bankruptcy proceeding" *id*. at 499 and (ii) "*Granfinanciera's* distinction between actions that seek 'to augment the bankruptcy estate' and those that seek 'a pro rata share of the bankruptcy *res*,' *ibid*., reaffirms that Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy estate; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process. (Emphasis in original.)" *Id*. at 499.

Here, Plaintiff's Act Claim (i) is an action to augment the bankruptcy estate (by seeking a

monetary recovery from Sure Sports)[1], (ii) is not derived from or dependent upon bankruptcy law (it is a state law claim that existed prior to Debtor's bankruptcy case), (iii) does not stem from the bankruptcy of Debtor, and (iv) would not be finally resolved in the claims allowance process (just like in *Stern*, Plaintiff's punitive damage claim within the Act Claim will not be resolved in the claims allowance process because the punitive damage issue is not necessary for the resolution of Sure Sports' proof of claim). Therefore, like the Bankruptcy Court in *Stern*, and in accordance with the dictates of *Stern*, the Bankruptcy Court does not have the constitutional authority to "hear and determine" Plaintiff's Act Claim.

In *Walden v. Stone*, 698 F.3d 910 (6th Cir. 2012), the Bankruptcy Court was faced with the exact issue presented in this adversary proceeding. In *Walden*, the debtor/plaintiff (Stone), pre-bankruptcy, was defrauded into selling the assets of his business to defendant (Walden). In return, defendant promised debtor/plaintiff that he would pay in full and satisfy certain obligations owed by debtor/plaintiff (including obligations secured by debtor/plaintiff's home) and that debtor/plaintiff would receive 40% of the equity in the new business to be established by defendant using the assets defendant acquired from debtor/plaintiff. Debtor/plaintiff transferred the subject to assets to defendant. However, defendant (i) failed to pay off and satisfy the obligations of debtor/plaintiff and instead purchased such obligations and (ii) refused to issue any equity in the new business (formed using the assets acquired from debtor/plaintiff) to debtor/plaintiff. Thereafter, defendant commenced an action against debtor/plaintiff to collect the debts defendant purchased from debtor's/plaintiff's creditors, which debts were supposed to have been satisfied by defendant. Debtor/plaintiff then commenced his chapter 11 case.

In the chapter 11 case, debtor/plaintiff filed a complaint against defendant seeking two types of relief: (i) that plaintiff/debtor (and the property of plaintiff/debtor acting as collateral) be discharged from his debts to defendant (consisting of the obligations plaintiff/debtor owed to third

---

[1] *See also*, *In re Deitz*, 469 B.R. 11, 18 (9th Cir. B.A.P. 2012)("Even in the few cases we have located suggesting an expansive interpretation of *Stern*, the courts generally limit their concerns to those actions in bankruptcy courts that seek to augment the bankruptcy estate at the expense of third parties … because those legal actions seek through a money judgment to take the defendant's property and that adjudication can only be made by a member of the independent Article III judiciary. (Citations omitted.)"

parties that were purchased by defendant) and (ii) for affirmative relief for damages, including punitive damages. At the conclusion of the trial on the claims of plaintiff/defendant, the Bankruptcy Court entered judgment which (i) invalidated all of plaintiff/debtor's obligations to defendant, and (ii) awarded plaintiff/debtor (a) $1,191,374 in compensatory damages and (b) $2,000,000 in punitive damages. Defendant appealed to the U.S. District Court, which affirmed the judgment. On appeal to the Sixth Circuit Court of Appeals, the Sixth Circuit reversed the judgment because the Bankruptcy Court, as an Article I court, did not have the constitutional authority to "hear and determine," i.e., enter a final judgment, on plaintiff/debtor's claims.

First, like *Stern*, *Walden* determined that the claims of plaintiff/debtor were "private rights" and, therefore, the "public right" exception did not apply to allow the Bankruptcy Court to enter a final judgment against defendant. *Walden* at 918-919.

Next, *Walden* analyzed (i) whether the Bankruptcy Court had the constitutional authority to enter a final judgment on plaintiff/debtor's claim to disallow the claims of defendant and (ii) whether the Bankruptcy Court had the constitutional authority to enter a final judgment on plaintiff/debtor's affirmative monetary claims. The Sixth Circuit Court of Appeals determined that while the Bankruptcy Court did have authority to disallow the claims of defendant, it further held that the Bankruptcy Court did **not** have the constitutional authority to enter a final judgment on plaintiff/debtor's claims for affirmative monetary relief.

In *Walden* at 919, the Court stated:

> *Stern* thus provides a summary of the law in this area: When a debtor pleads an action under federal bankruptcy law and seeks disallowance of a creditor's proof of claim against the estate—as in *Katchen*—the bankruptcy court's authority is at its constitutional maximum. 131 S.Ct. at 2617–18. But when a debtor pleads an action arising only under state-law, as in *Northern Pipeline*; or when the debtor pleads an action that would augment the bankrupt estate, but not "necessarily be resolved in the claims allowance process[,]" 131 S.Ct. at 2618; then the bankruptcy court is constitutionally prohibited from entering final judgment. *Id*. at 2614.

Concerning the Bankruptcy Court's lack of constitutional authority to hear and determine, i.e., enter a final judgment, on plaintiff/debtor's claims for affirmative relief and monetary damages, the *Walden* court determined that such claims (i) "sought money damages," (ii) "arose

9

exclusively under state law and existed without regard to any bankruptcy proceeding," and (iii) "only sought money damages to augment the bankruptcy estate." *Walden* at 921. *Walden* at 921 further ruled that "there was never any reason to think that [debtor's] disallowance claims would necessarily resolve his affirmative claims." Accordingly, *Walden* at 921 held that "[t]he bankruptcy court's judgment with respect to those [affirmative] claims [of plaintiff/debtor], therefore, was entered in violation of Article III.

With respect to its holding that the resolution of the debtor's claim disallowance claim would not "necessarily resolve his affirmative claims," *Walden* determined that "[plaintiff/debtor's] affirmative claims required him to prove facts beyond those necessary to disallow his [claim] disallowance claim." *Id*. at 921. In support thereof, *Walden* stated that "[m]oreover, just as in *Stern*, [plaintiff/debtor']s request for punitive damages required him to show that [defendant's] conduct warranted retribution and deterrence. *See id*. Hence there was never any reason to think that [plaintiff/debtor's] disallowance claims would necessarily resolve his affirmative claims. The bankruptcy court's judgment with respect to those claims, therefore, was entered in violation of Article III."

Here, Plaintiff's Act Claim (i) seeks money damages, including punitive damages, (ii) arose exclusively under state law and exists without regard to any bankruptcy proceeding, and (iii) only seeks money damages to augment Debtor's bankruptcy estate.

Additionally, the resolution of Plaintiff's Declaratory Relief claim, i.e., the disallowance claim, will not "necessarily fully resolve" the Act Claim. Just like in *Stern* and *Walden*, the affirmative claim of Plaintiff, i.e., the Act Claim, seeks punitive damages, which requires a showing, by clear and convincing evidence, of "oppression, fraud or malice." See, California Civil Code § 3294. Pursuant to the Supreme Court's holding in *Stern*, this punitive damage claim alone is sufficient to require that Plaintiff's Act Claim be heard and determined by an Article III court. Further, in the Act Claim, Plaintiff must prove actual damages, which is not required to disallow Sure Sports' proof of claim (all that is alleged to be necessary to disallow Sure Sports' claim is a finding that the Act applied to Sure Sports and that Sure Sports did not comply with the Act; if these findings are made, Sure Sports proof of claim will be disallowed). Accordingly, and

it cannot be truthfully disputed, that the resolution of the Declaratory Relief/claim disallowance claim will not fully resolve the Act Claim.

Based upon the Supreme Court's instructions and rulings in *Stern*, the Bankruptcy Court cannot "hear and determine" or enter any final judgment on and with respect to Plaintiff's Act claim.

## IV

## SURE SPORTS IS ENTITLED TO A JURY TRIAL ON THE ACT CLAIM

"The Seventh Amendment provides: 'In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved ….' We have consistently interpreted the phrase 'Suits at common law' to refer to 'suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered. (Emphasis in original.)'" *Granfinanciera* at 42. "The Seventh Amendment protects a litigant's right to a jury trial only if a cause of action is legal in nature and it involves a matter of 'private right.'" *Id*. at 42, fn. 4. "Where an action is simply for the recovery and possession of specific real or personal property, or for the recovery of a money judgment, the action is one of law." *Id*. at 46. *See also*, *Pernell v. Southhall Realty*, 416 U.S. 363, 370 (1974)("Where an action is simply for the recovery … of a money judgment, the action is one at law.")

"[Congress] lacks the power to strip parties contesting matters of private right of their constitutional right to a trial by jury." *Granfinanciera* at 51-52.

> Congress' power to block application of the Seventh Amendment to a cause of action has limits. Congress may only deny trials by jury in actions at law, we said, in cases where "public rights" are litigated: "Our prior cases support administrative factfinding in only those situations involving 'public rights,' e.g., where the Government is involved in its sovereign capacity under an otherwise valid statute creating enforceable public rights. Wholly private tort, contract, and property cases, as well as a vast range of other cases, are not at all implicated." (Citation omitted.)

*Id*. at 51.

As shown above, Plaintiff's Act Claim is a "private right," not a "public right.[2] Thus, Congress cannot, by 28 U.S.C. § 157 (or any other legislation), deprive Sure Sports of its' right to a jury trial in defending the Act Claim. Additionally, the Act Claim is "legal in nature" and not an equitable claim because it seeks the recovery of a money judgment.

Accordingly, Sure Sports is entitled to a jury trial on the Act Claim.[3]

## V
## CONCLUSION

For the reasons set forth above, Sure Sports respectfully requests that the Bankruptcy Court enter an Order finding, declaring and ruling that (i) the Bankruptcy Court does not have the constitutional authority to "hear and determine," i.e., enter a final judgment, on the Act Claim and (ii) Sure Sports is entitled to a jury trial on the Act Claim.

DATED: April 11, 2023

JEFFER MANGELS BUTLER & MITCHELL LLP

By: /s/ Thomas M. Geher
THOMAS M. GEHER

HEITNER LEGAL, PLLC

By: /s/ Darren Heitner
DARREN HEITNER
*Pro Hac Vice*
Attorneys for Sure Sports, LLC

---

[2] The U.S. Supreme Court has "defined 'private right' as 'the liability of one individual to another under the law as defined' (citation omitted), in contrast to cases that 'arise between the Government and persons subject to its authority in connection with the performance of constitutional functions of the executive or legislative departments. (Citation omitted.)'" *Granfinanciera* at 51, fn. 8. Obviously, the Act Claim is not a "public right" claim. The Act Claim is a "private right" claim.

[3] 28 U.S.C. § 157(e) provides that "[i]f the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designed to exercise such jurisdiction by the district court and with the express consent of all the parties." Here, as shown above, the Bankruptcy Court does not have the constitutional authority to "hear and determine" the Act Claim. Further, Sure Sports does not consent to the Bankruptcy Court conducting the jury trial.