CONSTANCE J. YU (SBN 182704)
E-mail: cyu@plylaw.com
GEORGE CHIKOVANI (SBN 254437)
E-mail: gchikovani@plylaw.com
PUTTERMAN | YU | WANG LLP
345 California Street, Suite 1160
San Francisco, CA 94104
Telephone No.: 415-839-8778
Facsimile No.: 415-737-1363

Special Counsel for FRED HJELMESET,
Trustee in Bankruptcy

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>EVANDER FRANK KANE,<br><br>Debtor. | Case No. 21-50028 SLJ<br>Chapter 7<br>Hon. Stephen L. Johnson<br><br>Adversary Proceeding No. 22-05033 SLJ |
| FRED HJELMESET,<br>Trustee in Bankruptcy,<br><br>Plaintiff,<br><br>v.<br><br>SURE SPORTS LLC, FKA SURE SPORTS LENDING LLC,<br><br>Defendant. | **PLAINTIFF FRED HJELMESET'S OPPOSITION TO DEFENDANT SURE SPORTS, LLC'S MOTION FOR ORDER (1) GRANTING JURY TRIAL AND (2) DECLARING THAT THE BANKRUPTCY COURT DOES NOT HAVE AUTHORITY TO ENTER FINAL JUDGMENT**<br><br>Date: May 9, 2023<br>Time: 1:30 pm Pacific Time<br>Place: Via Zoom Video Conference |

**Table of Contents**

I. INTRODUCTION .................................................................................................................. 5

II. FACTUAL AND PROCEDURAL BACKGROUND............................................................ 6

    A. Relevant Allegations in the Complaint.......................................................................... 6

    B. Sure Sports' Unsuccessful Motion to Compel Arbitration............................................. 7

III. ARGUMENT ........................................................................................................................ 8

    A. Sure Sports Concedes, As It Must, That The Court Has the Authority to Enter Final Judgment On Trustee's Declarative Relief Cause of Action, Without a Jury ........................... 8

    B. The Court Has Authority to Enter Final Judgment on Trustee's Affirmative Relief Cause of Action ................................................................................................................ 10

        1. Trustee's Miller-Ayala Cause of Action Will "Necessarily Be Decided" As Part of Ruling on the Declaratory Relief Cause of Action. ................................................... 10

        2. The Two Causes of Action Are Based on a Common Nucleus of Law and Fact. .......... 11

        3. The Miller-Ayala Act Claim Would Directly Alter the Amount Sought by Sure Sports, Rather Than Merely Augment the Estate............................................. 12

        4. Trustee's Request for Punitive Damages Does Not Preclude the Court from Adjudicating the Claim. .................................................................................................. 13

        5. Even if the Court Concludes That Sure Sports is Entitled to an Article III Tribunal on Punitive Damages, the Court Should Hear That Issue and Make a Report and Recommendations to the District Court. ...................................................... 16

    C. Sure Sports is Not Entitled to a Jury Trial.................................................................... 16

IV. CONCLUSION................................................................................................................... 18

| | |
|---|---|
| 1 | **Table of Authorities** |
| 2 | <u>Cases</u> |
| 3 | *Cai v. Shenzhen Smart-In Indus. Co.*, |
| 4 | 571 F. App'x 580 (9th Cir. 2014) .................................................................................. 10 |
| 5 | *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, |
|   | 778 F.3d 1059 (9th Cir. 2015) ........................................................................................ 18 |
| 6 | *Granfinanciera, S.A. v. Nordberg*, |
| 7 | 492 U.S. 33 (1989) ..................................................................................................... 8, 17 |
| 8 | *In re Bellingham Ins. Agency, Inc.*, |
|   | 702 F.3d 553 (9th Cir. 2012) .................................................................................. 14, 16 |
| 9 | |
| 10 | *In re Cohen*, |
|   | 522 B.R. 232 (Bankr. C.D. Cal. 2014) ............................................................................ 10 |
| 11 | *In re Deitz*, |
| 12 | 469 B.R. 11 (B.A.P. 9th Cir. 2012) ................................................................................ 10 |
| 13 | *In re Imaging3, Inc.*, |
|   | 634 F. App'x 172 (9th Cir. 2015) ..................................................................................... 9 |
| 14 | |
| 15 | *In re Johnson*, |
|   | 2023 WL 2668710 (Bankr. N.D. Ill. Mar. 28, 2023) ...................................................... 15 |
| 16 | *In re Oldco M Corp.*, |
| 17 | 484 B.R. 598 (Bankr. S.D.N.Y. 2012) ........................................................................... 14 |
| 18 | *In re Olde Prairie Block Owner,* |
|   | 457 B.R. 692 (Bankr. N.D. Ill. 2011) ............................................................................. 12 |
| 19 | |
| 20 | *In re Prior,* |
|   | 521 B.R. 353 (Bankr. E.D. Cal. 2014) ........................................................................... 10 |
| 21 | *In re Thorpe,* |
| 22 | 2001 WL 1350264 (N.D.Cal. 2001) ............................................................................... 17 |
| 23 | *In re TP, Inc.*, |
|   | 479 B.R. 373 (Bankr. E.D.N.C. 2012) ..................................................................... 11, 12 |
| 24 | |
| 25 | *Katchen v. Landy,* |
|   | 382 U.S. 323 (1966) ......................................................................................................... 8 |
| 26 | *Langenkamp v. Culp,* |
| 27 | 498 U.S. 42 (1990) ..................................................................................................... 8, 17 |
| 28 | |

*McElwee v. Scarff Bros., Inc. (In re McElwee),*
    469 B.R. 566 (Bankr. M.D. Pa. 2012) .................................................................................. 11

*Schmidt v. AAF Players, LLC.,*
    2020 WL 211409 (Bankr. W.D. Texas 2020) ...................................................................... 17

*Stern v. Marshall*,
    564 U.S. 462 (2011) ....................................................................................................... passim

*Tolliver v. Bank of Am. (In re Tolliver),*
    464 B.R. 720 (Bankr. E.D. Ky. 2012) ..................................................................... 11, 14, 15

*Tull v. United States*,
    481 U.S. 412 (1987) ............................................................................................................. 18

*Waldman v. Stone,*
    698 F.3d 910 (6th Cir. 2012) ..................................................................................... 9, 13, 14

Statutes

28 U.S.C. § 157 ......................................................................................................................... 9, 10

28 U.S.C. § 157(b)(2)(B) .............................................................................................................. 17

Cal. Bus. & Prof. Code § 18895 ..................................................................................................... 5

Cal. Bus. & Prof. Code § 18895.2 (b)(1) ..................................................................................... 11

Cal. Bus. & Prof. Code § 18897 ..................................................................................................... 7

Cal. Bus. & Prof. Code § 18897.9(b) .................................................................................. 7, 9, 11

## I. INTRODUCTION

Sure Sports' motion asks the Court to find that it has no authority to enter final judgment on Plaintiff Fred Hjelmeset's ("Plaintiff" or "Trustee") claim for affirmative relief under the Miller-Ayala Athlete Agents Act,[1] and that Sure Sports is entitled to a jury trial on that claim, arguing that the Miller-Ayala Act claim is not "constitutionally core" under *Stern v. Marshall*, 564 U.S. 462, 499 (2011). Sure Sports' arguments assiduously elide the elephant in the room: Sure Sports has filed a $1.2 million proof of claim in this case, and this adversary proceeding seeks the disallowance of that claim on the basis of Sure Sports' violation of the Miller-Ayala Act. That part of the Complaint—the second cause of action for declaratory relief—is indisputably core and within this Court's authority to hear and determine. Sure Sports implicitly concedes this point by limiting its motion to the first cause of action.

Moreover, because Trustee's affirmative claims under the Miller-Ayala Act turn on essentially the same factual and legal issues that must be resolved to adjudicate the declaratory relief cause of action, the affirmative claims will "necessarily be decided" in the course of adjudicating the bankruptcy estate. Pursuant to *Stern* and Ninth Circuit authority interpreting it, this Court therefore has the constitutional authority to hear and determine these claims.

Sure Sports' argument that Trustee's prayer for punitive damages precludes the application of the "necessarily decided" principle under *Stern* misrepresents the Supreme Court's analysis, which was primarily based on substantive differences between the factual and legal findings necessary to resolve the debtor's objection to the proof of claim on the one hand, and her affirmative counterclaim against the debtor, on the other. Multiple courts interpreting *Stern* have found that counterclaims would be "necessarily decided" and therefore within the constitutional authority of the bankruptcy court even where punitive damages were sought, so long as the issues underlying the counterclaim were "integral" to the allowance or disallowance of the claim. That is the case here.

Sure Sports' demand for a jury trial—an ironic demand having moved unsuccessfully to compel arbitration and thereby preclude a jury trial—fares no better. First, the same principles that

---
[1] California's Miller-Ayala Athlete Agents Act (the "Miller-Ayala Act" or "Act"), Bus. & Prof. Code section 18895 *et seq*.

give this Court the authority to hear and determine the case also preclude any jury trial right Sure Sports may have had if Sure Sports had not invoked the bankruptcy court's equitable jurisdiction by filing a proof of claim. Second, there is no jury trial right in the first place, as Trustee's claim is equitable rather than legal in nature. Contrary to Sure Sports' claim that seeking a monetary judgment makes the claim legal, established Ninth Circuit precedent holds that claims for restitution are inherently equitable and not subject to a jury trial right.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Relevant Allegations in the Complaint

Debtor Evander Kane ("Kane") is a professional hockey player. From February 2018 until January 2022, Kane played for the San Jose Sharks of the National Hockey League, and resided in San Jose, CA. Compl. ¶1. Since January 2022, Kane has played for the Edmonton Oilers. *Id.*

Defendant Sure Sports is, in its own description, "a full service company that offers customized underwriting, banking, and financing solutions for professional athletes." *Id.* ¶2. Sure Sports itself is not a lender or bank, but acts as an intermediary—in practical effect a loan broker—to arrange loans and other financing products for professional athletes. However, Sure Sports is not a licensed loan broker in either California or in Florida, the situs of Sure Sports' principal place of business. *Id.* ¶3. Sure Sports recruited and solicited Kane to enter into a series of agreements for Sure Sports to arrange for a series of loans from third party lenders. Sure Sports subsequently recruited and solicited Kane to enter into loans with third party lenders. *Id.* ¶4. In exchange for Sure Sports procuring "customized underwriting, banking, and financing solutions" for Kane, the agreements provided for Sure Sports to pay variety of fees from Kane. These fees were characterized, variously, as "underwriting fees," "savings fees," and "legal/closing fees." Some of the fees charged by Sure Sports were paid out of the loan proceeds at the time of closing, while some were "deferred," and were paid to Sure Sports by the lender in installments when the lender received installment payments from Kane. In practical effect all these fees were charged by Sure Sports for its services provided in soliciting, arranging, and documenting the loans for Kane. *Id.* ¶5. Several of the agreements between Sure Sports and Kane were entered into while Kane was a California resident and playing for the San Jose Sharks ("the California Agreements"). The California Agreements

included at least eight separate loan agreements from five different lenders, totaling more than $15.5 million in principal. *Id.* ¶6. Kane paid more than $452,000.00 in fees to Sure Sports pursuant to the California Agreements. *Id.* ¶7.

On April 21, 2021, Sure Sports filed a Proof of Claim in the Bankruptcy Proceeding claiming to be owed $1,187,950.94 in fees and interest. *Id.* ¶8. The money Sure Sports seeks to recover under the Proof of Claim is based pursuant entirely on three of the California Agreements, relating to loans provided by Centennial Bank, Professional Bank, and CB&T/Zions Bank. *Id.* ¶62.

Trustee filed this Adversary Proceeding, on September 12, 2022. Trustee seeks a finding from the Court that Sports' activities under the Agreements violated the Miller-Ayala Act. The Miller-Ayala Act specifically protects California student *and* professional athletes. Cal. Bus. & Prof. Code §18897 (Professional Athletes); §18897.6 (Student Athletes). Kane was a California athlete from February 2018 to January 2022. Sure Sports is therefore not entitled to recover any additional fees from Kane under the California Agreements, and must disgorge all fees collected under the California Agreements. *Id.* ¶9.

Trustee specifically seeks a declaration from the Court that Sure Sports may not recover anything on its Proof of Claim. Compl. ¶¶78-80. Trustee alleges that "[b]ecause Sure Sports has failed to comply with the requirements of the Act, Trustee owes Sure Sports no money or other consideration, and pursuant to Cal. Bus. & Prof. Code § 18897.9(b) Sure Sports must refund all funds and other consideration paid to Sure Sports pursuant to the Agreement, an amount that is at minimum $452,414,31." *Id.* ¶76.

B. **Sure Sports' Unsuccessful Motion to Compel Arbitration**

Sure Sports responded to the Complaint on October 17, 2022 by filing a motion to compel arbitration. Dkt. 12. Sure Sports argued that Trustee's Miller-Ayala Act claim was a non-core claim under the Bankruptcy Code, and that compelling arbitration of Trustee's claims would not impact discharge and would not jeopardize the objectives of the Bankruptcy Code. On January 17, 2023 the Court denied Sure Sports' motion. The Court held that this adversary proceeding is a core proceeding because it involves the allowance or disallowance of Sure Sports' proof of claim, and that the decision whether to compel arbitration was therefore in the Court's discretion. The Court found that it

was appropriate to exercise its discretion to deny the motion to compel, because arbitration would conflict with the Bankruptcy Code's purposes of centralization of disputes and result in piecemeal litigation, particularly in light of overlapping factual issues between this proceeding and related adversary proceedings involving the banks who funded the loans brokered by Sure Sports.

At the case management conference on February 17, 2023, Sure Sports stated that it intended to object to the Court's jurisdiction to enter a final judgment on the Complaint, and would also be demanding a jury trial. The Court ordered the Parties to brief those issues, and this Motion ensued.

## III. ARGUMENT

### A. Sure Sports Concedes, As It Must, That The Court Has the Authority to Enter Final Judgment On Trustee's Declarative Relief Cause of Action, Without a Jury

The Motion is limited to Trustee's first cause of action for violation of the Miller-Ayla Act (what Sure Sports refers to as the "Act claim"). Sure Sports thereby implicitly concedes that the Court has the authority to enter final judgment on, and that it is not entitled to a jury for, Trustee's second cause of action for declaratory relief. As it must: the declaratory relief cause of action directly seeks the disallowance of Sure Sports' proof of claim. As such, it is a core claim—as the Court has already held in denying Sure Sports' motion to compel arbitration. Courts, including the authorities relied upon by Sure Sports, universally recognize that bankruptcy courts have both the statutory and constitutional authority to decide claims that directly seek the disallowance of a proof of claim are core claims. *See Langenkamp v. Culp,* 498 U.S. 42, 44 (1990) (when the individual files a claim against the estate, that individual has "trigger[ed] the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power. If the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process which is triable only in equity. In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's *equity jurisdiction*.") (emphasis in original; quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58 (1989)); *Katchen v. Landy,* 382 U.S. 323, 336 (1966) (bankruptcy referee could use summary proceeding without jury to determine preference claim, because preference issues necessarily had to be resolved in the course of claims-allowance

process); *Waldman v. Stone,* 698 F.3d 910, 921 (6th Cir. 2012) (cited by Sure Sports; holding bankruptcy court had authority to hear and determine debtor's objection to proof of claim based on state law grounds); *see also*, *In re Imaging3, Inc.*, 634 F. App'x 172, 175 (9th Cir. 2015) ("The bankruptcy court's disallowance of [creditor's] claims for stock loss and legal fees did not violate the rule announced in *Stern v. Marshall*. Allowance and disallowance of claims against an estate are specifically listed as 'core' proceedings under 28 U.S.C. § 157. Moreover, in contrast to the debtor's state law counterclaim against a creditor in *Stern,* [creditor's] claims for 'stock loss' and 'attorney's fees' were claims directly against the bankruptcy estate. By filing proofs of claim, [creditor] invoked the bankruptcy court's jurisdiction.").

It is therefore undisputed that, whatever the outcome of this motion, this Court will retain the authority to hear and determine Trustee's declaratory relief cause of action, without a jury. The primary basis for that cause of action, and indeed the objection to the Proof of Claim, is Sure Sports' violation of the Act. "Each of the Underwriting Agreements pursuant to which Sure Sports seeks to recover funds in its Proof of Claim is a 'financial agreement' within the meaning of the Act, was entered into while Kane was a San Jose Sharks player and a California resident. Therefore Sure Sports is not entitled to recover any compensation pursuant to these agreements. Bus. & Prof. Code § 18897.9(b)." Complaint ¶ 63. As quoted in the Complaint, one of the remedies for a violation of the Act is that anyone in violation of the act cannot seek payment of any consideration pursuant to a contract that violates the Act. The Act provides that "*[n]o person shall owe an athlete agent any money or other consideration pursuant to a… financial services contract… negotiated by the athlete agent if the athlete agent fails to comply with this chapter*… The athlete agent shall refund any money or other consideration paid pursuant to that contract." Compl. ¶ 29, (quoting Cal. Bus. & Prof. Code § 18897.9(b)) (emphasis added).

Therefore, in ruling on the declaratory relief cause of action the Court will necessarily be called upon to determine whether Sure Sports has violated the Miller-Ayala Act with respect to the California Agreements.

///

///

### B. The Court Has Authority to Enter Final Judgment on Trustee's Affirmative Relief Cause of Action

#### 1. Trustee's Miller-Ayala Cause of Action Will "Necessarily Be Decided" As Part of Ruling on the Declaratory Relief Cause of Action.

Sure Sports' motion is based on the principle announced in *Stern*, which held that the Constitution requires an Article III court to adjudicate certain counterclaims by the trustee, even where Section 157 gives the bankruptcy court the statutory authority to hear and determine those claims. However, *Stern* rule includes an important limitation, applicable here: the bankruptcy court is constitutionally empowered to hear and determine all counterclaims that "would necessarily be resolved" as part of the claims allowance process. *Stern*, 564 U.S. at 499 (bankruptcy court has constitutional authority where "the action at issue stems from the bankruptcy itself *or would necessarily be resolved in the claims allowance process*") (emphasis added).

As the Ninth Circuit has recognized, "the Supreme Court's decision in *Stern* … concluded that bankruptcy courts had the constitutional authority to decide even state law counterclaims to filed proofs of claim if the counterclaim would necessarily be decided through the claims allowance process." *In re Deitz*, 469 B.R. 11, 20 (B.A.P. 9th Cir. 2012), *aff'd*, 760 F.3d 1038 (9th Cir. 2014) (holding that bankruptcy court can enter final judgment on underlying non-core claims that necessarily are part of adjudicating nondischargeability action). In *Cai v. Shenzhen Smart-In Indus. Co.*, 571 F. App'x 580 (9th Cir. 2014), the Ninth Circuit held that "the bankruptcy court had authority to enter a 'dollar amount' judgment of nondischargeability," noting that "*Stern* implicitly recognized that bankruptcy courts do have authority to adjudicate a state law counterclaim if the counterclaim would necessarily be decided through the claims allowance process… Determining the scope of the debtor's discharge is a fundamental part of the bankruptcy process." *Id.* at 583.

Bankruptcy courts in the Ninth Circuit have applied these principles to hold that they have authority to hear and determine state law counterclaims that would necessarily be resolved as part of the claims allowance process. *See In re Cohen*, 522 B.R. 232, 238–39 (Bankr. C.D. Cal. 2014) (resolution of counterclaims relating to payment of rents and community property issues was properly before the court because those issues would have to necessarily be resolved as part of claims allowance process); *In re Prior*, 521 B.R. 353, 361 (Bankr. E.D. Cal. 2014) ("Because the debtor's

claimed setoff must necessarily be adjudicated in the process of allowing or disallowing [creditor's] claim, doing so does not create any constitutional limitation on the court's jurisdiction.")

2. The Two Causes of Action Are Based on a Common Nucleus of Law and Fact.

To assess whether a counterclaim claim must be "necessarily resolved" in the claims allowance process, courts generally look to see if a "common nucleus of law and fact" exists to inextricably intertwine the claims and counterclaims. *See In re TP, Inc.*, 479 B.R. 373, 385–86 (Bankr. E.D.N.C. 2012); *McElwee v. Scarff Bros., Inc. (In re McElwee),* 469 B.R. 566, 576–77 (Bankr. M.D. Pa. 2012); *see also Tolliver v. Bank of Am. (In re Tolliver),* 464 B.R. 720, 736 (Bankr. E.D. Ky. 2012) (explaining that the court in *Stern* looked at not only the "factual overlap of the claim resolution and the counterclaim, but also the legal elements which must be determined to resolve the claim and the counterclaim and the remedies sought by the counterclaim and the impact on the claims allowance process").

Trustee's first cause of action easily meets this standard. Adjudicating the declaratory relief cause of action will require the Court to rule on issues as a matter of law including: whether Sure Sports is an "athlete agent" within the meaning of the Act; whether Kane was a California athlete entitled to the protections of the Act during the period when he was playing for the San Jose Sharks; whether the California Agreements between Sure Sports and Kane are "financial services contracts" within the meaning of the Act; and whether Sure Sports "directly or indirectly recruited or solicited" Kane to enter into those agreements. *See* Compl. ¶68; Cal. Bus. & Prof. Code § 18895.2 (b)(1). These same issues will determine whether the Trustee is entitled to recover the affirmative relief he is seeking on the first cause of action. The primary form of monetary compensation sought in the Complaint—disgorgement and restitution of amounts paid by Kane to Sure Sports under the agreements alleged to be covered by the Act—is governed by the same statutory subsection that provides the basis for the objection to the proof of claim, quoted in Section III(A) above: "No person shall owe an athlete agent any money or other consideration pursuant to a… financial services contract… negotiated by the athlete agent if the athlete agent fails to comply with this chapter… *The athlete agent shall refund any money or other consideration paid pursuant to that contract*." Compl. ¶ 29, (quoting Cal. Bus. & Prof. Code § 18897.9(b)) (emphasis added).

11

Put simply, whether Sure Sports violated the Miller-Ayala Act in connection with the California Agreements, and consequently whether the California Agreements are enforceable as a matter of law under the Miller-Ayala Act, is a dispositive issue in the adjudication of both Sure Sports' proof of claim and Trustee's affirmative claims in this proceeding.

### 3. The Miller-Ayala Act Claim Would Directly Alter the Amount Sought by Sure Sports, Rather Than Merely Augment the Estate.

Furthermore, for a counterclaim to be necessarily resolved in ruling on the proof of claim, the relationship must be such that resolution of the counterclaim would alter the amount sought by the claimant. *See In re Olde Prairie Block Owner,* 457 B.R. 692, 698–99 (Bankr. N.D. Ill. 2011) (finding that two counterclaims for breach of contract had to be resolved in ruling on the proof of claim because one sought "rescission" based on economic duress and the other sought damages for a breach of good faith and fair dealing, which would reduce the amount claimed by debtor). As the court explained in *In re TP, Inc.*:

> In other words, a counterclaim by the estate based in state law must seek to directly reduce or recoup the amount claimed in order to be resolved in ruling on the proof of claim. Applying this type of test, a counterclaim by the bankruptcy estate that seeks affirmative monetary relief to augment the estate *but does not directly modify the amount claimed* would not qualify as a claim to be resolved in ruling on the proof of claim.

479 B.R. at 386 (emphasis added).

Trustee's Miller-Ayala Act claim meets this standard because a violation of the Act would be the basis for disallowing the proof of claim, and the Miller Ayala Act claim therefore seeks to directly modify the amount claimed. *See In re* TP, 479 B.R. at 386 (holding that counterclaim for fraud in the inducement met the "necessarily decided" standard under *Stern* because "it attacks the enforceability of the loan documents, the basis for the proof of claim. As such, this claim will necessarily be resolved in the claims allowance process and constitutes a core proceeding"); *In re Olde Prairie Block Owner, LLC*, 457 at 698–99 (counterclaims for rescission based on economic duress and breach of duty of good faith and fair dealing met the "necessarily decided" standard because they sought disallowance and setoff, respectively, of the proof of claim).

4. Trustee's Request for Punitive Damages Does Not Preclude the Court from Adjudicating the Claim.

Apparently anticipating this argument, Sure Sports claims in the Motion that the "necessarily resolved" exception to *Stern* does not apply because Trustee also seeks punitive damages, relying on *Stern* and a Sixth Circuit case, *Waldman v. Stone,* 698 F.3d 910, 921 (6th Cir. 2012). However, contrary to Sure Sports' claim *Stern* does *not* state a general rule that seeking punitive damages prevents the application of the "necessarily resolved" principle. In *Stern*, the Court's primary basis for finding that the counterclaim was not "necessarily resolved" in ruling on objections to the proof of claim was the many substantive differences between the cause of action that formed the basis for the creditor's proof of claim (defamation) and the counterclaim asserted by the debtor (tortious interference with contract):

> In ruling on Vickie's counterclaim, the Bankruptcy Court was required to and did make *several factual and legal determinations* that were not "disposed of in passing on objections" to Pierce's proof of claim for defamation, which the court had denied almost a year earlier. ... There was some overlap between Vickie's counterclaim and Pierce's defamation claim that led the courts below to conclude that the counterclaim was compulsory, … or *at least in an "attenuated" sense related* to Pierce's claim, 264 B.R., at 631. But there was never any reason to believe that the process of adjudicating Pierce's proof of claim would necessarily resolve Vickie's counterclaim. See *id.,* at 631, 632 (explaining that "the primary facts at issue on Pierce's claim were the relationship between Vickie and her attorneys and her knowledge or approval of their statements," and "the *counterclaim raises issues of law entirely different from those raise[d]* on the defamation claim"). …
>
> The *only overlap* between the two claims in this case was the question whether Pierce had in fact tortiously taken control of his father's estate in the manner alleged by Vickie in her counterclaim and described in the allegedly defamatory statements. From the outset, it was clear that, even assuming the Bankruptcy Court would (as it did) rule in Vickie's favor on that question, the court could not enter judgment for Vickie unless the court *additionally ruled on the questions whether Texas recognized tortious interference with an expected gift as a valid cause of action, what the elements of that action were, and whether those elements were met in this case*. 275 B.R., at 50–53. Assuming Texas accepted the elements adopted by other jurisdictions, that meant Vickie would need to prove, *above and beyond Pierce's tortious interference, (1) the existence of an expectancy of a gift; (2) a reasonable certainty that the expectancy would have been realized but for the interference; and (3) damages*. *Id.,* at 51.
>
> 564 U.S. 462, 497–98 (emphasis added)

Case: 22-05033   Doc# 32   Filed: 04/25/23   Entered: 04/25/23 18:03:03   Page 13 of 18

13

The debtor's prayer for punitive damages was mentioned by the *Stern* Court only after analyzing these differences. *Id.* ("Also, because Vickie sought punitive damages in connection with her counterclaim, the Bankruptcy Court could not finally dispose of the case in Vickie's favor without determining whether to subject Pierce to the sort of 'retribution,' 'punishment[,] and deterrence,' ... those damages are designed to impose."). Nowhere in the opinion did the Court state that the punitive damages issue was determinative.

*Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012), the other case relied upon by Sure Sports, is likewise inapposite. First, the creditor in *Waldman* never filed a proof of claim. *Id.* at 920. Second, as in *Stern,* the primary reason given for why the affirmative counterclaim would not be "necessarily decided" in the disallowance process was that "Stone's affirmative claims required him to prove facts beyond those necessary to his disallowance claims. Those facts included that Waldman had promised to pay off Stone's tax lien and other debts, and to give Stone a forty percent interest in the new company." *Id.* at 921. The *Waldman* court found that the differences were sufficiently significant that "there was never any reason to think that Stone's disallowance claims would necessarily resolve his affirmative claims." *Id.* The overlap between the grounds for disallowance of Sure Sports' proof of claim and Trustee's affirmative claims is much closer, as explained in Sections III(B)(1)-(2), above.

Additionally, *Waldman* has never been cited with approval by the Ninth Circuit or a California district court, and the Sixth Circuit's primary holding in *Waldman*, that a bankruptcy court cannot make a final ruling on a *Stern* claim even where the parties consent, is directly contrary to Ninth Circuit law. *See In re Oldco M Corp.*, 484 B.R. 598, 613 (Bankr. S.D.N.Y. 2012) ("*Waldman* is also inconsistent with the recent decision by the Ninth Circuit in [*In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553 (9th Cir. 2012)], which concluded that implied consent is effective to permit a bankruptcy judge to enter a final order or judgment on a fraudulent conveyance claim even though the bankruptcy court could not do so absent consent.")

Multiple courts applying *Stern* have found that counterclaims involving punitive damages would be necessarily resolved as part of ruling on the bankruptcy estate. In *In re Tolliver*, 464 B.R. 720 (Bankr. E.D. Ky. 2012), the court held that where a debtor asserted fraud and intentional misrepresentation as defenses to creditor's proof of claim, and also asserted an affirmative claim for

fraud and misrepresentation, the bankruptcy court had authority to resolve the affirmative claims even though punitive damages were claimed. "The Plaintiff's claim for fraud/intentional misrepresentation as it relates to the 2004 and 2005 Forbearance Agreements must necessarily be resolved in the claims allowance process and the Court may, therefore, enter final judgment on Count III. The enforceability of the Forbearance Agreements is so integral to defining the parties' agreement and the resulting allowance/disallowance of Defendants' claims that the fact that Plaintiff *may* recover punitive damages *in the event* she prevails on Count III does not require a different result." *Id.* at 741 (emphasis in original). Similarly here, Sure Sports' violation of the Act is integral to the allowance or disallowance of the proof of claim.

In *In re Johnson*, 2023 WL 2668710, *9 (Bankr. N.D. Ill. Mar. 28, 2023), the court applied the *Stern* "necessarily decided" standard in the context of ruling on a motion to compel arbitration. The debtor sought the disallowance of creditor's proof of claim, and asserted a number of counterclaims. The court held that debtor's claim that creditor violated Illinois' Consumer Fraud Act in connection with the transaction that gave rise to creditor's proof of claim was "constitutionally core" under *Stern* because it sought the disallowance of the proof of claim, and the issues had to be necessarily resolved in adjudicating the creditor's claim, even though debtor "also seeks a refund of all sums paid on the loan as well as punitive damages and an award of attorney's fees and costs." *Id.* at *9.

The present case is analogous to *In re Tolliver* and *In re Johnson*. Unlike in *Stern* and *Waldman*, the factual and legal issues required for the Court to rule for Trustee on his affirmative claims are identical to those required to resolve the objection to Sure Sports' Proof of Claim based on the Act. To the extent punitive damages become an issue for the Court to consider, the basis for punitive damages will almost certainly be the same factual evidence that forms the basis for a finding that Sure Sports violated the Act at all: Sure Sports actions, statements, and omissions in its dealings with Kane.

///

///

///

|1|          5.       <u>Even if the Court Concludes That Sure Sports is Entitled to an Article III Tribunal on Punitive Damages, the Court Should Hear That Issue and Make a Report and Recommendations to the District Court.</u>

To the extent that the Court nevertheless finds that punitive damages, or any other aspect of the first cause of action, requires factual or legal findings that fall outside of those that are necessarily resolved in ruling on the declaratory relief cause of action, the proper course of action is for the Court to hear those issues and make findings and recommendations for the district court to review. In *In re Bellingham*, the Ninth Circuit held that, in cases that are statutorily "core" under Section 157 but constitutionally require an Article III forum under *Stern*, the bankruptcy courts are empowered to hear such claims and submit reports and recommendations to the district court. *See* 702 F.3d 553, 566 (9th Cir. 2012) ("In sum, § 157(b)(1) provides bankruptcy courts the power to hear fraudulent conveyance cases and to submit reports and recommendations to the district courts. Such cases remain in the core, and the § 157(b)(1) power to 'hear and determine' them authorizes the bankruptcy courts to issue proposed findings of fact and conclusions of law. Only the power to enter final judgment is abrogated.")

### C.     Sure Sports is Not Entitled to a Jury Trial

Sure Sports' demand for a jury trial fares no better. First, Sure Sports' demand for a jury trial at this stage conflicts with its previous motion to compel arbitration of Trustee's claims. The relief Sure Sports sought in that motion would of course have precluded a jury trial on any claims. That Sure Sports now demands a jury trial having been unsuccessful in compelling arbitration exposes Sure Sports' true position: rather than actually desiring a jury trial, Sure Sports' sole priority is to find a forum other than this Court. Sure Sports has waived its right to a jury trial on that basis alone.

Second, Sure Sports' request for a jury trial necessarily fails if the Court finds that it has the power to hear and determine the Miller Ayala Act cause of action. The Ninth Circuit has held that under the Supreme Court's jurisprudence in *Granfinanciera* and *Stern*, the analysis of the right to an Article III tribunal and the right to a jury trial in bankruptcy proceedings is coextensive. *See In re Bellingham*, 702 F.3d at 563 (noting "the Supreme Court's equation of litigants' Article III rights with their Seventh Amendment jury trial rights in bankruptcy-related cases"; "*Stern* fully equated

bankruptcy litigants' Seventh Amendment right to a jury trial in federal bankruptcy proceedings with their right to proceed before an Article III judge"). Therefore, there is no right to a jury trial where a counterclaim by the debtor must "necessarily be resolved" as part of the administration of the bankruptcy estate.

To the extent Sure Sports possessed a right to a jury trial, that right was waived by filing a proof of claim. *See Langenkamp*, 498 U.S. at 45 ("Respondents filed claims against the bankruptcy estate" and "[c]onsequently, they were not entitled to a jury trial"); *In re Thorpe*, 2001 WL 1350264, *2 (N.D.Cal. 2001) (noting creditor "assumes certain risks" when filing a proof of claim, including losing right to jury trial on any counter-claims filed by the debtor or trustee). *Schmidt v. AAF Players, LLC.*, 2020 WL 211409 (Bankr. W.D. Texas 2020) is illustrative. The plaintiff filed a class action against AAF Players, LLC (the "Debtor") in San Francisco Superior Court alleging tort and contract claims as a representative of employees of the Debtor. The original complaint demanded a jury trial. Soon after the class case was filed, the Debtor filed a Chapter 7 petition in the Western District of Texas, the class plaintiff filed a proof of claim in the bankruptcy case, and the class case was transferred to the bankruptcy court in Texas. The court granted a motion to strike the jury demand, saying:

> By filing their Claim, Plaintiffs asserted a right to bankruptcy estate assets. Apportioning estate assets is an equitable "public rights" procedure mandated by Congress under 28 U.S.C. § 157(b)(2)(B) to which jury trial right does not attach. Therefore, by filing their proof of claim, Defendants effectively converted their legal dispute to an equitable dispute. Because *Granfinanciera* held that the right to a jury trial only extends to matters that are legal in nature and involve private rights, a creditor that files a claim loses its Seventh Amendment right to a jury trial.

*Id.* at *11.

Even if the "necessarily decided" exception and Sure Sports' filing of the proof of claim did not waive Sure Sports' jury trial right, such a right only exists in the first place if the Miller Ayala Act claim is a legal claim rather than an equitable one. *See Granfinanciera*, 492 U.S. at 42. Sure Sports argues that the Miller-Ayala Act claim is a legal rather than equitable claim because "it seeks a money judgment." Mot. at 12:4. However, the primary monetary claim in the Complaint is for disgorgement of the amounts paid by Kane to Sure Sports during the time Kane was a California resident. *See* Compl. at 15:3-4. Claims for restitution or disgorgement are equitable and do not

require a jury trial. *See Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1075 (9th Cir. 2015) ("A claim for disgorgement of profits [under the Lanham Act] is equitable, not legal. … [T]he current law recognizes that actions for disgorgement of improper profits are equitable in nature.") (citing cases). The Ninth Circuit has held that the "Seventh Amendment right to jury trial preserves the basic institution of jury trial in only its most fundamental elements; accordingly, only those incidents which are regarded as fundamental, as inherent in and of the essence of the system of trial by jury, are placed beyond the reach of the legislature". *Id.* at 1074 (quoting *Tull v. United States*, 481 U.S. 412, 426 (1987)).

In the alternative, to the extent the Court finds that any aspect of the case would require a jury trial, the Court should reserve any decisions regarding trial structure or forum until a later point in the case, after discovery is taken and the Court and the parties are in a better position to determine whether those issues are likely to be part of any trial.

## IV. CONCLUSION

For the foregoing reasons, Trustee respectfully requests that the Court deny Sure Sports' motion.

DATED: April 25, 2023

PUTTERMAN | YU | WANG LLP

By: _____
GEORGE CHIKOVANI
Special Counsel for FRED HJELMESET,
Trustee in Bankruptcy